Filed 10/28/15  P. v. Ruelas CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>MANUEL ERNESTO RUELAS,<br><br>  Defendant and Appellant. | F069046<br><br>(Super. Ct. No. F13907468)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Alan M. Simpson, Judge.

Gabriel C. Vivas, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Levy, Acting P.J., Detjen, J. and Peña, J.

Defendant Manuel Ernesto Ruelas was convicted by no contest plea of felony evading a police officer with willful disregard (Pen. Code, § 2800.2, subd. (a)). On appeal, he contends the trial court erred in failing to hold a *Marsden*[1] hearing to determine the basis of his complaints about defense counsel. He argues we should remand for a *Marsden* hearing. We affirm.

## BACKGROUND

On November 19, 2013, defendant filled out, initialed, and signed a plea form. He wrote: "Admit prior strike and prison priors[.] Ct ind 5 year lid." And he noted that the maximum sentence he could receive as a result of his plea was 11 years in prison.

On January 13, 2013, in preparation for the sentencing hearing, the probation officer prepared his report and recommendations. The report noted that defendant pled no contest to felony evading an officer, and he admitted one prior strike conviction (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and five prior prison terms (§ 667.5, subd. (b)). As for the plea agreement, the report stated the "Court indicated Five Year Lid." The report detailed defendant's criminal history, which began in 1992, and noted that he was on active parole when he committed the instant offense and that his base term should be doubled due to the prior strike conviction and one year should be added for each of his five prior prison terms. Under the heading of "Other Significant Information," the probation officer wrote:

> "The defendant … is statutorily ineligible for probation pursuant to PC 667(c)(2)/1170.12(a)(2). He is before the Court for his sixth felony conviction. In the instant offense, he led officers on a vehicle chase through residential neighborhoods.
>
> "Since 1992, the defendant's record of criminality has become increasingly dangerous and violent. When given the opportunities at rehabilitation out of custody, his record is littered with violations. In this matter, he was out of custody three months and began causing trouble at the

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118.

2.

residence of someone whom he dated. As he is not eligible or suitable for probation, it is recommended probation be denied.

"This officer weighed the aggravating and mitigating circumstances; the defendant's record, poor history on parole, commission of the offense while on parole, against his early admission of guilt. Finding the aggravating factors to prevail in this matter, the aggravated term of confinement is recommended. With the prior 'strike' and prison priors, the aggregate term recommended is 11 years."

At the sentencing hearing on January 24, 2014, defense counsel acknowledged his possession of the probation report, then argued as follows:

"Your Honor, [defendant] would like the Court to consider the possibility of striking a strike and putting a stayed term over his head and do a long-term inpatient program, including the Poverello House, which is a one-year program. He is getting older and his criminality is decreasing. I think most of his conduct in the past, even now, is related to the drinking and/or alcohol."

Defendant then stated:

"Your Honor, right before I got arrested, I was in the process of putting myself into Turning Point if you give me a chance. I never asked for a program, never been to a program. But I got kids now, I'm getting older, they need me. I do want to change."

The prosecutor added:

"And the People would just note the defendant's increase in criminality and the inherent date and time in his current criminal conduct, and we'll submit on that."

The court sentenced defendant to the indicated lid of five years in prison: the midterm of two years, doubled to four years due to the prior strike conviction, plus one year for one prior prison term.

Immediately following the court's sentencing, defense counsel told the court that defendant was "asking to withdraw his plea and start over." Defendant told the court: "Your Honor, before we started talking, I asked and he told me I could." Defense counsel answered, "Based on what he told me, there was no legal cause to do so," to

which the court responded, "Right." Defendant continued, "I was told—I was told I was going to be eligible right here." The court, however, denied defendant's request to withdraw the plea.

Then the following occurred:

"THE DEFENDANT: But when I signed, I told my—I even wrote you a letter about a program.

"THE COURT: Okay.

"THE DEFENDANT: He told me it was going to be held over my head. That's why I signed.

"THE COURT: He told you what?

"THE DEFENDANT: It was going to be held over my head. That's why I asked him right now. You told me this and that. He goes it's too late to withdraw your plea.

"THE COURT: There's a decision made, sir, with regard to your record and your sentence. And I looked at your record. I don't think that you're a suitable candidate for a program and that's because of all the things that you've done in the past, what you've done in this particular case, and your poor performance on parole and probation. You were on parole at the time you committed this offense. You had a nonsensical explanation for why you were doing what you were doing in this case.

"THE DEFENDANT: That's what I was explaining to him.

"THE COURT: You were driving in a reckless manner and endangering people and property in a residential area and refusing to yield to a police law enforcement vehicle. You went through several stop signs and/or lights. You are getting wors[e] it seems as you get older instead of better in terms of the things that you're doing as far as criminality. You do have a Penal Code Section 245 assault with a deadly weapon conviction which is your strike. And this driving the vehicle in the manner in which you did is also a violent offense in a sense. And so you're not amenable to a program. And the other thing is if the Court—the Court can put people who are suitable for programs in them or authorize that they can go to one, but you are not suitable for all those reasons and it's not really the Court's responsibility to see to it that you get to a program. That's your responsibility.

4.

"THE DEFENDANT: I understand that.

"THE COURT: Okay. So you need to do that.

"THE DEFENDANT: I wrote you a letter, because like I said, he told me it was going to be held over my head and I was going to go to a program. That's why I signed.

"[DEFENSE COUNSEL]: I never said that.

"THE COURT: All right."

## DISCUSSION

Defendant contends this record demonstrates that he believed defense counsel "had misrepresented the facts and misadvised him about the possibility of his receiving probation, as well as his right to withdraw his plea." He argues that his statements put the trial court on notice that he was dissatisfied with counsel's performance and triggered the court's duty to conduct a *Marsden* hearing, inquire into the source of defendant's dissatisfaction with counsel, and make a record sufficient to show the nature of his grievances and the court's response to them.

Defendant acknowledges he "never specifically stated that he wanted substitute counsel," but argues it is "only logical to infer in this context that someone who believes [he has been] misadvised by a lawyer would want another attorney." He asserts that the record is incomplete because the court never addressed the letter defendant stated he had written to the court.

"[A] trial court is obligated to conduct a *Marsden* hearing on whether to discharge counsel for all purposes and appoint new counsel when a criminal defendant indicates after conviction a desire to withdraw his plea on the ground that his current counsel provided ineffective assistance only when there is 'at least some clear indication by defendant,' either personally or through his current counsel, that defendant 'wants a substitute attorney.' [Citation.] … [A]t any time during criminal proceedings, if a defendant requests substitute counsel, the trial court is obligated, pursuant to [the

5.

Supreme Court's] holding in *Marsden*, to give the defendant an opportunity to state any grounds for dissatisfaction with the current appointed attorney. [Citation.] In turn, if the defendant makes a showing during a *Marsden* hearing that his right to counsel has been ""substantially impaired"" [citation], substitute counsel must be appointed as attorney of record for all purposes." (*People v. Sanchez* (2011) 53 Cal.4th 80, 89-90, fn. omitted (*Sanchez*).)[2] "[W]e will not find error on the part of the trial court for failure to conduct a *Marsden* hearing in the absence of evidence that defendant made his desire for appointment of new counsel known to the court." (*People v. Richardson* (2009) 171 Cal.App.4th 479, 484.) "The mere fact that there appears to be a difference of opinion between a defendant and his attorney over trial tactics does not place a court under a duty to hold a *Marsden* hearing." (*People v. Lucky* (1988) 45 Cal.3d 259, 281.) Moreover, "[m]ere grumbling" about counsel's failures is insufficient (*People v. Lee* (2002) 95 Cal.App.4th 772, 780), as are oblique expressions of dissatisfaction with counsel (see *People v. Burton* (1989) 48 Cal.3d 843, 855). But if a defendant makes an unequivocal indication that he wants a new attorney, the trial court must hear the reasons for the defendant's belief that his attorney has not afforded adequate representation. (*Marsden, supra,* 2 Cal.3d at pp. 123-124.)

In this case, there was no clear indication by defendant, either personally or through his current counsel, that he wanted a new attorney. (*Sanchez, supra,* 53 Cal.4th

---

**2** In *Sanchez*, the Supreme Court specifically disapproved *People v. Eastman* (2007) 146 Cal.App.4th 688—upon which defendant relies in this case—explaining that this court, "in the present case and in its earlier cases, *People v. Eastman*, *supra,* 146 Cal.App.4th 688, *People v. Mejia* (2008) 159 Cal.App.4th 1081, and *People v. Mendez* (2008) 161 Cal.App.4th 1362, incorrectly implied that a *Marsden* motion can be triggered with something less than a clear indication by a defendant, either personally or through current counsel, that the defendant 'wants a substitute attorney.'" (*Sanchez, supra,* 53 Cal.4th at p. 90, fn. 3.) Defendant notes that in footnote 3, *Sanchez* specifically disapproved prior cases from this court, but he conspicuously fails to include *Eastman* in that list, mentioning only *People v. Mejia, supra,* 159 Cal.App.4th 1081 and *People v. Mendez, supra,* 161 Cal.App.4th 1362.

at pp. 89-90.)  The trial court was not required to make inferences from defendant's request to withdraw his plea or his statements about counsel's advice.[3]  In any event, defendant informed the court of the reason for his dissatisfaction with counsel, which was counsel's alleged representation that the court would place him in a program, rather than prison, and if it did not, he would be allowed to withdraw his plea.  Counsel denied making this representation, the probation report made it clear defendant was not eligible for probation, and defendant's plea form demonstrated that defendant was fully informed of the likely five-year (but up to 11-year) consequence of his plea.  Defendant thus failed to show his right to counsel had been "substantially impaired."  (*Marsden, supra,* 2 Cal.3d at p. 123; *Sanchez, supra,* 53 Cal.4th at p. 90.)

## DISPOSITION

The judgment is affirmed.

---

[3] We note that the letter to which defendant refers is not part of the record.